[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11196

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 30, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00971 CV-ORL-22-KRS

ANTHONY G. MARTIN,

Plaintiff-Appellant,

versus

BREVARD COUNTY PUBLIC SCHOOLS,
an entity of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 30, 2008)**

Before EDMONDSON, Chief Judge, KRAVITCH and ALARCÓN,[*] Circuit
Judges.

_____

[*]Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

PER CURIAM:

Anthony G. Martin ("Martin") appeals the district court's grant of summary judgment to Brevard County Public Schools (the "School District") on his claims for interference and retaliation under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 ("FMLA"). We vacate the judgment and remand the case for further proceedings.

## BACKGROUND

In January 2000, the School District hired Martin as a payroll supervisor. Martin worked for the School District on a contractual basis subject to annual renewal by the school board. By its terms, Martin's last contract with the School District expired on 30 June 2004.

During his time with the School District, Martin lived with his wife and daughters. In late 2003, Martin's daughter, Brittany, a student and member of the Army Reserve, gave birth to Hannah: Martin's granddaughter. Martin provided Brittany and Hannah substantial financial support, furnishing them with a home, utilities, transportation, food, money for expenses, and health insurance.

2

Hannah's biological father did not live in Martin's home; Brittany was a single mother.

Michael Degutis, Assistant Superintendent of Finance for the School District, was Martin's immediate supervisor and responsible for evaluating Martin's performance. On Martin's 2001 and 2002 performance reviews, he received a "professional level" rating—the highest rating possible—in the "Overall Evaluation" category. The following year, on his 2003 performance review, Martin received a "professional level" rating in all ten performance categories, including the "Overall Evaluation" category. According to the School District, however, Martin's later performance did not remain at this exemplary level.

On 19 April 2004, Degutis gave Martin an interim performance review. In that evaluation, Martin received a "professional level" rating in three categories, a "needs improvement" rating in five categories, and an "unsatisfactory level" rating in two categories. Degutis also presented Martin with an improvement plan, which afforded Martin through 1 June 2004 "to demonstrate significant progress as outlined . . . in the improvement plan."

Around the same time, the Army Reserve informed Brittany that her unit was called to active duty and would soon be deployed overseas. On 29 April

2004, Martin submitted to the School District a written request for twelve weeks of FMLA leave to care for Hannah beginning on 7 May 2004. Martin presented this explanation: "Due to unforeseeable events, I have day-to-day responsibility for caring for my granddaughter and stand 'in loco parentis.' These responsibilities include caring for and financially supporting her. She is less than 12-months old . . . ."

Degutis approved Martin's request for FMLA leave from 7 May through 30 June but not beyond the expiration of Martin's contract. Martin's FMLA leave overlapped with the period set out in Martin's improvement plan. According to Martin, he relied on Degutis's approval "as proof that [he] was FMLA[-]eligible and that [his] reasons were FMLA-qualifying." He would not have taken leave had it not been approved as FMLA-qualifying.

After granting Martin FMLA leave, Degutis consulted with several senior School District employees, including the Director of Human Resources, the Director of Compensation/Benefits, and the Deputy Superintendent. Those people informed Degutis that Martin's contract with the School District, which expired on 30 June 2004, would not be renewed if FMLA leave prohibited Martin from fulfilling his improvement plan. Degutis informed Martin of this position on 3

May 2004 and asked that Martin sign a statement to that effect.  Martin refused to sign.

On 7 May 2004, Martin took FMLA leave as scheduled.  But Brittany was never deployed.  Instead, she continued to attend school and to satisfy her occasional Army Reserve obligations, just as she had done before Martin requested FMLA leave.  When Brittany was at home, Martin assisted her in feeding and bathing Hannah and changing Hannah's diaper.  When Brittany was at school, which occurred about four days a week for three or four hours a day and some evenings, or was periodically away for weekend Army Reserve drills, Martin was solely responsible for caring for Hannah.  Martin continued to provide Brittany and Hannah financial support during this period.

While Martin was on FMLA leave, Degutis recommended to the human resources department that Martin's contract not be renewed.  The School District followed that recommendation.  On 21 June 2004, Martin received a letter from Degutis stating that the School District did not renew Martin's contract because Martin failed to complete his improvement plan.  The School District concedes that this notification was in effect a termination of Martin's employment.  Martin's last day with the School District was 30 June 2004.

5

Martin sued the School District for interfering with certain of his FMLA rights and for retaliating against him for taking FMLA leave. The School District moved for summary judgment on Martin's claims, which the district court granted. The district court concluded that Martin was not entitled to FMLA leave, as "no reasonable jury could find that [Martin] stood in loco parentis in this situation," and that the School District was not estopped from challenging Martin's in loco parentis status. The district court, in an abundance of caution, also analyzed the substance of Martin's claims and concluded that they were without merit. Martin appeals.

STANDARD OF REVIEW

We review de novo an order granting summary judgment. Drago v. Jenne, 453 F.3d 1301, 1305 (11th Cir. 2006). In doing so, we view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006). We will affirm summary judgment only if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

6

## DISCUSSION

Martin raises several issues on appeal.  As an initial matter, Martin contends that he stood in loco parentis to Hannah and was therefore entitled to FMLA leave to care for her.  But even if his leave were not FMLA-qualifying, Martin also claims that the School District was estopped from challenging his entitlement to that leave because the School District originally approved his leave request.  In addition, Martin points to various supposed errors in the district court's substantive analysis of his FMLA claims.  We address each issue in turn.

### A.     Martin's Entitlement to FMLA Leave

The FMLA affords an eligible employee twelve weeks of unpaid leave in any one-year period "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter."  29 U.S.C. § 2612(a).  A son or daughter "means a biological, adopted, or foster child, a stepchild, a legal ward, or

a child of a person standing in loco parentis." Id. § 2611(12). Martin sought FMLA leave to care for Hannah on the basis of in loco parentis status.[1]

The phrase in loco parentis literally means "in the place of a parent." Black's Law Dictionary 791 (7th ed. 1999). According to its generally accepted common law meaning, in loco parentis "refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption." Dillon v. Maryland-Nat'l Capital Park & Planning Comm'n, 382 F. Supp. 2d 777, 786 (D. Md. 2005) (internal quotation marks omitted). The Department of Labor has further defined in loco parentis under the FMLA to include persons with the "day-to-day responsibility to care for and financially support a child . . . . A biological or legal relationship is not necessary." 29 C.F.R. § 825.113(c)(3).

We cannot agree with the district court that no reasonable jury could find that Martin stood in loco parentis to Hannah while he was on FMLA leave. During that period, Martin provided Brittany and Hannah substantial financial support, including a home, food, and health insurance. Martin also played a significant role in caring for Hannah even though Brittany was never deployed

---

[1] The parties do not dispute that the School District is a covered employer and that Martin is an eligible employee under the FMLA. 29 U.S.C. §§ 2611(2)(A), (4).

8

overseas: he helped with Hannah when Brittany was at home; and he assumed sole responsibility for Hannah when Brittany was at school or Army Reserve drills. We cannot say as a matter of law that Martin stood in loco parentis to Hannah; nor can we say that he did not. Martin has presented sufficient evidence to create a genuine issue of material fact, and the district court erred in concluding otherwise.

Martin argues that the School District should be estopped from challenging his entitlement to FMLA leave because it originally approved his leave request. Martin recognizes that this Court has not yet adopted the estoppel doctrine in the FMLA context, but nevertheless asks us to follow the lead of other courts that have done so. We need not accept Martin's invitation, however; the estoppel doctrine, as a matter of law, would not apply here in any event.

The equitable doctrine of estoppel is invoked "to avoid injustice in particular cases." Heckler v. Cmty. Health Servs. of Crawford County, Inc., 104 S. Ct. 2218, 2221 (1984). A party claiming estoppel must show, among other things,[2] that the party to be estopped misrepresented material facts despite being

---

[2] To invoke estoppel, a party must prove that: "(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation." Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1326 (11th Cir. 2008).

aware of the true facts.  <u>Busby</u>, 513 F.3d at 1326.  That is not the case here.  The School District approved Martin's request for FMLA leave based on Brittany's anticipated deployment overseas.  When doing so, the School District did not (and could not) know that this circumstance would never materialize and thereby call into question Martin's entitlement to FMLA leave.[3]  Accordingly, even if we adopted the estoppel doctrine in the FMLA context—an issue on which we say nothing—Martin could not invoke it in this case.

B. <u>Martin's FMLA Claims</u>

We now turn to the substance of Martin's interference and retaliation claims.  In doing so, we assume for the sake of discussion that Martin stood <u>in loco parentis</u> to Hannah and was therefore entitled to FMLA leave to care for her.

---

[3]Martin contends that the School District should be charged with constructive knowledge of all facts relevant to whether his leave qualified under the FMLA.  But Martin identifies no statute, regulation, or case suggesting that constructive knowledge is appropriate under the facts in this case; and we are aware of none.

1.    Interference Claim

To prove FMLA interference, an employee must demonstrate that he was denied a benefit to which he was entitled under the FMLA.  29 U.S.C. § 2615(a)(1); Strickland v. Water Works and Sewer Bd. of Birmingham, 239 F.3d 1199, 1206-07 (11th Cir. 2001).  An employee need not "allege that his employer intended to deny the right; the employer's motives are irrelevant."  Strickland, 239 F.3d at 1208.  Although Martin claims that the School District interfered with several of his substantive FMLA rights, we see only one that can survive summary judgment.

An employee has the right following FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position.  29 U.S.C. § 2614(a)(1)(A); see also 29 C.F.R. § 825.214(a).  But this right is not absolute; an employer can deny reinstatement "if it can demonstrate that it would have discharged the employee had he not been on FMLA leave."  Strickland, 239 F.3d at 1208; see also 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a); Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 n.1 (11th Cir. 2000) (employer that interferes with employee's right to reinstatement "bears the burden of proving that the employee

11

would have been laid off during the FMLA period for reasons unrelated to the [FMLA leave], and therefore is not entitled to restoration").

Martin contends that the School District interfered with his right to reinstatement by not renewing his contract.[4]  In response, the School District argues that it terminated Martin for a reason wholly unrelated to his FMLA leave: failure to fulfill his improvement plan.  Even if that reason is true, however, the record does not establish beyond dispute that the School District would have discharged Martin had he not taken FMLA leave.  In fact, the record is unclear: whether Martin would have been retained and his contract renewed if he had been able to complete the final three-plus weeks of his improvement plan is a matter of speculation.[5]  Martin was unable to complete the plan as a result of his being—at least arguably—on proper FMLA leave.  A genuine issue of material fact remains

---

[4]Martin cannot use the FMLA to circumvent his improvement plan; if reinstated, he just would have three-plus weeks of employment either to fulfill that plan or to face termination.  See 29 U.S.C. § 2614(a)(3)(B) (employee not entitled to "any right, benefit, or position of employment other than [that] to which the employee would have been entitled had the employee not taken the leave"); 29 C.F.R. § 825.216(a) ("An employee has no greater right . . . to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.").

[5]The School District does not argue that Martin's right to reinstatement is precluded under 29 C.F.R. § 825.216(b), which denies an employee hired "for a specific term" the right to reinstatement "if the employment term . . . is over . . . and the employer would not otherwise have continued to employ the employee."  But even if it did, that regulation would not support summary judgment. The School District fails to show beyond dispute that it would have severed its relationship with Martin had he not taken FMLA leave.

12

concerning Martin's claim that the School District interfered with his right to reinstatement. Summary judgment was not proper.

### 2. Retaliation Claim

To prove FMLA retaliation, an employee must show that his employer intentionally discriminated against him for exercising an FMLA right. See 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c). Unlike an interference claim, an employee "bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Strickland, 239 F.3d at 1207 (internal quotation marks omitted). Martin alleges that the School District retaliated against him for taking FMLA leave by terminating his employment.

Absent direct evidence of retaliatory intent,[6] we apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 798 (11th Cir.

---

[6]Martin argues that the School District's 21 June 2004 representation to him that it was terminating his employment because he did not fulfill his improvement plan on account of taking FMLA leave is direct evidence of retaliatory intent. Because Martin has presented sufficient circumstantial evidence of retaliatory intent to survive summary judgment, we decline to reach the question of whether direct evidence is in this case.

2000).  Under that approach, an employee claiming FMLA retaliation must show that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity.  Id.

Once the employee establishes a prima facie case of retaliation, the burden shifts to the employer "to articulate a legitimate reason for the adverse action." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006).  If the employer does so, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Id. at 1298 (internal quotation marks omitted).  The employee may rely on evidence that he already produced to establish his prima facie case.  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 921 (11th Cir. 1993).

Martin easily demonstrates a prima facie case of retaliation.  In fact, the School District challenges only the causal relation between Martin's FMLA leave and termination.  But the close temporal proximity between the two—Martin was terminated while on FMLA leave—is more than sufficient to create a genuine

14

issue of material fact of causal connection. Hurlbert, 439 F.3d at 1298. To prevail on summary judgment, therefore, the School District must present a legitimate, non-retaliatory reason for terminating Martin: a reason that no reasonable jury could conclude was pretextual. The School District has not met this high standard.

The School District contends that Martin was terminated because he failed to fulfill his improvement plan, not because he took FMLA leave. The School District says, in effect, that it was not hostile to FMLA-leave taking but rather indifferent to it: a subtle distinction, yet a legitimate, non-retaliatory explanation. Intent is at issue. And the record contains evidence on which reasonable minds could find pretext, including the School District's warning to Martin about the ramifications of his taking FMLA leave and the close temporal proximity between Martin's FMLA leave and termination. Although the School District's explanation may ultimately prove true, a genuine dispute of material fact nonetheless remains. Summary judgment was not appropriate.

CONCLUSION

We VACATE the district court's judgment and REMAND the case for further proceedings.

VACATED and REMANDED.

15

KRAVITCH, Circuit Judge, specially concurring:

I agree with the majority's opinion vacating the summary judgment and remanding to the district court. I write this special concurrence to address Martin's interference claim. Although I reach the same conclusion as the majority that summary judgment on Martin's interference claim was improper, I do so for different reasons.

It is undisputed that Martin was unable to fulfill his improvement plan on account of his leave and that the main reason he was not rehired was because he was unable to complete the plan. The question, therefore, is whether an employer must give an employee additional time after returning from leave to improve his prior poor performance through an established improvement plan where the employee was on a form of probation before taking leave.

The FMLA regulations provide that "[i]f an employee is no longer qualified for the position because of the employee's inability to attend a necessary course, renew a license, fly a minimum number of hours, etc., as a result of the leave, the employee shall be given a reasonable opportunity to fulfill those conditions upon return to work." 29 C.F.R. § 825.215(b). This raises the question of whether the completion of a program to demonstrate improvement is the type of qualification program that an employee is entitled to complete after leave or whether it is a

16

privilege that an employer may withdraw if incompatible with FMLA leave. Under the circumstances of this case, I believe that it is analogous to the qualification programs discussed in the regulations. See id. Martin's superior, Degutis, approved Martin's leave request, but then informed him that taking the leave would prevent him from completing the improvement plan and directly result in the non-renewal of his contract. Thus, the FMLA leave prevented Martin from completing a program required for contract renewal. The School District, therefore, interfered with Martin's rights under FMLA to take approved leave by not re-hiring him on account of his inability to complete the improvement plan.[1]

The School District correctly points out that FMLA provides no greater protection against termination unrelated to FMLA leave than the employee would have had if he had not requested leave. 29 C.F.R. § 825.216(a); see Gunnell v. Utah Valley State College, 152 F.3d 1253, 1262 (10th Cir. 1998). This rule applies, however, where the reason is *unrelated* to the FMLA leave. See e.g. O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1355 (11th Cir. 2000) (involving termination of an employee on FMLA because of legitimate company down-sizing). Here, Martin's termination was not unrelated to his leave because

---

[1] Additionally, the district court erred in finding that Martin's rights pursuant to FMLA were not violated because they were extinguished when his year-to-year employment contract ended. The School District's counsel stipulated that "contract non-renewal" is the same thing as "termination" for the purposes of FMLA.

the reason he was unable to complete the required improvement plan was that he was on FMLA leave.

Because I feel that Martin established that the School District interfered with his rights under FMLA, I agree with the majority that the district court's grant of summary judgment for the School District on the interference claim was improper.