[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-10734
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 12, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:08-cv-01576-TCB

GERALDINE RUTLAND,

Plaintiff-Appellant-Counter-Defendant,

versus

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee-Counter-Claimant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(August 12, 2010)

Before HULL, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Geraldine Rutland appeals the district court's grant of summary judgment to State Farm Mutual Automobile Insurance Company on her claim that State Farm breached their insurance contract. Essentially, Rutland is arguing that State Farm is required to provide coverage for a crash that occurred during a lapse in Rutland's insurance coverage due to nonpayment of premiums. We find that there is no genuine issue of material fact present in Rutland's claim and affirm the summary judgment order of the district court.

## I. BACKGROUND

State Farm provided automobile insurance coverage to Rutland and in June 2003 the insurance policy was active. Rutland had previously agreed to allow State Farm to directly debit Rutland's checking account each month for payment of the insurance premiums. On June 27, 2003, State Farm attempted to debit $286.51 from Rutland's checking account for payment of the premiums on all five of Rutland's insurance policies. On June 30, 2003, Rutland's bank informed State Farm that they would not honor the debit because Rutland's account was overdrawn.

State Farm sent a certified letter to Rutland on July 7, 2003 informing her that the premium on her insurance policy had not been paid. The letter went on to inform Rutland that if the premium was not paid by July 20, 2003 her insurance

policy would be canceled. State Farm canceled Rutland's insurance coverage on July 20, 2003 when the premium had not been paid.

On July 31, 2003, Rutland was driving intoxicated and crashed into another car, seriously injuring an adult and two minor children. Rutland reported the crash to her State Farm agent, John Davis, on August 1, 2003. Shirley Davis, an employee in the agent's office, informed Rutland that her premiums had not been paid and therefore her insurance coverage had been terminated on July 20, 2003. According to Rutland's version of events, Ms. Davis instructed Rutland that if she paid the past due amount, $286.51, her insurance coverage would be reinstated and that State Farm would provide retroactive coverage for the crash. Ms. Davis has denied making any representation to Rutland that she would receive retroactive coverage and John Davis has stated that the employees in his office would never make an offer of retroactive coverage.

Rutland mailed a check for $286.51 to State Farm on August 4, 2003 and her insurance coverage was reinstated on August 5, 2003. Rutland claims that she spoke with Ms. Davis once again after paying the past due amount and Ms. Davis assured her that she would receive retroactive coverage for the crash. State Farm then sent a letter to Rutland on August 28, 2003 to inform Rutland that they would not provide insurance coverage for her July 31 crash because of the cancellation

due to non-payment.  The letter asked Rutland to provide State Farm with any further information that they should consider in regard to the denial of insurance coverage.  State Farm then credited Rutland's account on her September 2003 billing statement for the late payment Rutland tendered for the period that her coverage was cancelled.

The victims of Rutland's crash filed three civil actions against her on May 25, 2005.  State Farm did not defend Rutland and Rutland was unable to pay an attorney.  The state court entered a default judgment against Rutland in the amount of $15,750,000.  Rutland filed suit against State Farm on March 26, 2008 alleging State Farm acted in bad faith by failing to defend her in the civil action arising from her crash.  State Farm moved for summary judgment and to exclude the affidavit of Jeniffer Ebert.[1]  Rutland moved for partial summary judgment and to exclude the testimony of Frank Edward Jenkins III.[2]  The district court granted State Farm's motion to exclude and motion for summary judgment.  The district court also denied Rutland's motion for summary judgment and motion to exclude

_____

[1]Rutland attempted to introduce the affidavit of Ms. Ebert as proof that State Farm in that past had provided retroactive coverage for events that occurred while the insured's policy was cancelled for non-payment of premiums.

[2]State Farm offered the testimony of Mr. Jenkins in regards to the issue of whether Rutland took the proper steps to notify State Farm of the May 25, 2005 lawsuits filed by the victims of Rutland's crash.

as moot.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*, viewing the record and drawing all inferences in favor of the non-moving party.  *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1265 (11th Cir. 2008) (per curiam) (citations omitted).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact."  *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation omitted).

## III.  DISCUSSION

Rutland was not covered by a written insurance policy on July 31, 2003, the date of her crash.  Rutland failed to pay her premium on June 27, 2003.  State Farm sent a certified letter to Rutland informing her of the payment problems and noticing her that the policy would be cancelled if the premium was not paid by July 20, 2003.  Upon Rutland's failure to pay her premiums, State Farm followed the proper procedure under Georgia law for cancellation of an insurance policy.  *See* O.C.G.A. § 33-24-44(d) (ten-day notice is sufficient when a policy is

5

cancelled for non-payment of premiums). State Farm had no duty, under the original written policy, to defend Rutland in any civil action arising from the July 31, 2003 crash "since this was subsequent to the date coverage was cancelled due to nonpayment of premium." *Buffington v. State Auto. Mut. Ins. Co.*, 384 S.E.2d 873, 874 (Ga. Ct. App. 1989).

Rutland, however, contends that despite the lack of a written insurance policy, State Farm had a duty to defend her in the May 25, 2005 lawsuit. First, Rutland argues that State Farm's August 5, 2003 acceptance of her late premium payment, combined with what Rutland views as an untimely and improper refund of the late payment, created a material issue as to whether State Farm waived its defense of lack of payment. Second, Rutland argues that Ms. Davis issued an oral binder for retroactive coverage when she advised Rutland to send in her past due premium payment. Third, Rutland argues that there is a genuine issue concerning promissory estoppel. Rutland also argues that the district court abused its discretion in excluding an affidavit from her witness, Jennifer Ebert.

A. *State Farm Did Not Waive Cancellation of Rutland's Policy by Accepting a Late Premium Payment on August 5, 2003*

"If an insurance company receives, accepts, and retains past-due premiums which are paid subsequent to the due date and expiration of the grace period, it

6

renews the contract and waives the forfeiture for non-payments provided the acceptance is unconditional and the facts are known." *Clark v. United Ins. Co. of Am.*, 404 S.E.2d 149, 152 (Ga. Ct. App. 1991). Rutland relies on *Clark* for the proposition that a genuine issue was raised as to whether State Farm's non-payment defense was waived upon its acceptance of Rutland's late premium payment. While similar, the facts in the present case are distinguishable from *Clark*.

State Farm provided Rutland with a refund for the amount she tendered as a late payment for the cancellation period. State Farm sent Rutland a letter on August 28, 2003 informing her they would not cover her crash and then refunded the late payment on her September 2003 statement. In *Clark*, the insurance company did not refund the late payments. *Id.* at 153. State Farm, however, refunded Rutland's late payment within weeks of determining that Rutland's policy had been cancelled during the time of the crash. State Farm's refund occurred over four years prior to Rutland filing suit against State Farm. Rutland stresses the fact that State Farm held onto her late payment for "at least six weeks." However, State Farm did in fact refund the late payment and we do not believe that six weeks is an unreasonable period of time for a company to determine that a payment tendered to it was improper and due to be refunded.

7

Therefore, State Farm did not "retain" a past-due premium as was the case in *Clark* and thus, State Farm did not waive its defense of non-payment.

*Clark* is also distinguishable from Rutland's experience because in *Clark* there was a pattern of late payments after the grace period. *Id.* The insurance company in *Clark* would often accept late premium payments after the insurance had expired upon the passing of the grace period. Rutland has not provided any evidence that late payments after the grace period was a regular practice in her dealings with State Farm.

Rutland also finds issue with the way in which State Farm calculated the refund and the time it took State Farm to refund the money. Neither of these arguments raise a genuine issue of material fact that will save this case from summary judgment. First, if Rutland believes that State Farm did not provide a complete refund for the cancellation period, then Rutland can file a separate lawsuit to collect this amount. We will not, however, find that State Farm "retained" a past-due premium on the basis of Rutland's speculation that State Farm may have incorrectly calculated the refund. Rutland has offered nothing more than conjecture and speculation that State Farm's calculations of the refund may have been in error, and this falls short of establishing a genuine issue of material fact. Second, Rutland cites O.C.G.A. § 33-24-44(c)(1) in support of her

8

assertion that State Farm's refund was late. This part of the Georgia Code deals with refunds upon cancellation of a policy, not refunds from past-due payments for a period during which the policy was cancelled. This subsection of the Georgia Code has no applicability to the facts at hand.

B.    *Ms. Davis's Representations to Rutland Did Not Create an Oral Binder Between Rutland and State Farm*

State Farm, Ms. Davis, and Mr. Davis all dispute Rutland's claim that Ms. Davis told Rutland that State Farm would provide retroactive coverage for her crash. However, at the summary judgment stage we must take all facts in favor of the nonmovant, Rutland, and so we will proceed under the assumption that Ms. Davis did in fact represent to Rutland, twice, that State Farm would provide retroactive coverage.

"The principal shall be bound by all the acts of his agent within the scope of his authority . . . ." O.C.G.A. § 10-6-51. "The principal is also bound when the agent lacks express authority but is possessed of apparent authority." *Home Materials, Inc. v. Auto Owners Ins. Co.*, 300 S.E.2d 139, 141 (Ga.1983). Ms. Davis did not have the actual or apparent authority to bind State Farm to retroactive coverage of Rutland's crash.

State Farm does not give its agents the express authority to offer retroactive

9

coverage. Ms. Davis and Mr. Davis both testified that they understood State Farm's policy to be that an agent did not have the authority to offer retroactive coverage. Furthermore, the merger clause in Rutland's original insurance policy stated that "this policy contains all of the agreements between you and us or any of our agents." Doc. 21-3 at 6. The policy did not contain any provisions allowing for retroactive coverage.

"'Apparent authority' is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the principal which have led the third party to believe reasonably the agent had such authority." *Thompson v. Gen. Motors Acceptance Corp.*, 389 S.E.2d 20, 21–22 (Ga. Ct. App. 1989) (quotation omitted). The mere idea of retroactive insurance coverage defies common sense. According to O.C.G.A. § 33-1-2(2) insurance is a "contract which is an integral part of a plan for distributing individual losses whereby one undertakes to indemnify another or to pay a specified amount or benefits upon determinable contingencies." Coverage for an event that has already occurred contravenes the very definition of insurance. A reasonable person speaking with any insurance agent would not reasonably believe that an insurance agent has the authority to provide retroactive coverage.

The fact that Rutland sent in a late payment after Ms. Davis allegedly told her that State Farm would provide retroactive coverage is of no issue. The late payment does not necessarily evidence a belief on Rutland's part that Ms. Davis had the authority to provide retroactive coverage. Even if Rutland truly believed Ms. Davis had the authority to provide retroactive coverage, it was not a reasonable belief.

C.   *Rutland Has Not Established a Genuine Issue Concerning Promissory Estoppel*

"A promise which the promisor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44(a). Rutland argues that because of Ms. Davis's representations that State Farm would provide retroactive coverage she renewed her policy with State Farm rather than entering into a new insurance contract with another company at a lower rate.

Rutland's theory of promissory estoppel misses the mark. The representations made by Ms. Davis occurred after Rutland's crash and after Rutland's policy had been cancelled for non-payment. Even if Ms. Davis's representations did cost Rutland a higher insurance premium, this has nothing to

11

do with State Farm's refusal to cover her crash.  At the very most, Rutland's reliance on Ms. Davis's promise of retroactive coverage has cost her the difference in insurance premiums.  If Rutland wishes to file suit against State Farm for this difference in insurance premiums she is free to do so.  However, this theory of detrimental reliance cannot provide Rutland with a basis to recover damages in relation to State Farm's refusal to cover her crash.

D.      *The District Court Did Not Abuse Its Discretion in Excluding Jennifer Ebert's Affidavit*

"We review evidentiary rulings made by the district court for abuse of discretion and will reverse the district court's decision only in cases where substantial prejudice exists."  *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1259 (11th Cir. 2004) (citation omitted).

Rutland attempted to introduce Jennifer Ebert's affidavit as an example of State Farm providing retroactive coverage.  Ms. Ebert's affidavit stated that she had been in an accident, was informed that her policy had been cancelled for non-payment, that she was to send in the late payment, and finally that State Farm provided coverage for the accident that occurred during the period when her policy was cancelled.

The district court found that Ms. Ebert's affidavit lacked certain facts that

12

made it impossible for the court to determine its probative value. First, the affidavit did not state whether it was Ms. Ebert or her bank who was at fault for the non-payment of premiums. Second, the affidavit did not state whether State Farm followed the proper notice procedures for cancellation of a policy. The district court could not determine whether Ms. Ebert's experience had any relevance to Rutland's case. Furthermore, the affidavit was untimely filed.

We find that the district court did not abuse its discretion in excluding the affidavit. First, the district court was well within its discretion in determining that the affidavit lacked probative value. Second, Rutland was not substantially prejudiced by the exclusion of this affidavit. Ms. Davis still lacked the actual authority to authorize retroactive coverage, even if State Farm had previously provided Ms. Ebert with coverage in a factually indistinguishable event. Further, Rutland was not aware of Ms. Ebert's experience when she sent in her late payments, thus she cannot claim that Ms. Ebert's experience led her to a reasonable belief that Ms. Davis had the apparent authority to offer retroactive coverage.

## IV. CONCLUSION

We find that State Farm properly cancelled Rutland's insurance coverage during the period of time that she crashed her car into the victims' car. Further,

13

Ms. Davis did not have the actual or apparent authority to engage in an oral binder with Rutland for retroactive coverage of the crash. Rutland has not established a plausible theory of promissory estoppel on which she can recover. And finally, the district court did not abuse its discretion by excluding Jennifer Ebert's affidavit. The district court properly granted State Farm's motion for summary judgment and thus, Rutland's motion for partial summary judgment was also properly denied as moot.

**AFFIRMED.**