[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11601

_____

D.C. Docket No. 1:11-cv-02486-SCJ

SAKARI JARVELA,

Plaintiff - Appellant,

versus

CRETE CARRIER CORPORATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 18, 2014)

Before TJOFLAT, COX, and ALARCÓN,[*] Circuit Judges.

PER CURIAM:

_____

[*] The Honorable Arthur L. Alarcón, United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

## I. INTRODUCTION

Many Americans suffer from alcoholism. Sakera Jarvela, a commercial truck driver, is one of those individuals. Department of Transportation (DOT) regulations prohibit anyone with a "current clinical diagnosis of alcoholism" from driving commercial trucks. Jarvela's employer, Crete Carrier Corporation, contends that it maintains a company policy that prohibits it from employing anyone who has had a diagnosis of alcoholism within the past five years. Crete maintains that this safety-based rule is a business necessity. Thus, after Jarvela's physician diagnosed him as suffering from alcoholism, Crete dismissed him—citing both the DOT regulations and its company policy. Jarvela subsequently filed suit against Crete, alleging that Crete violated both the Americans with Disabilities Act of 1990 (ADA) and the Family Medical Leave Act of 1993 (FMLA) by terminating him. The district court granted summary judgment in favor of Crete on all of Jarvela's claims, and Jarvela appeals. We affirm.

## II. PROCEDURAL HISTORY

Jarvela filed suit against Crete in the Northern District of Georgia. In Count I, Jarvela alleged that Crete discriminated against him based on his disability—alcoholism—in violation of the ADA. In Count II, Jarvela alleged FMLA interference and retaliation claims against Crete for failing to return him to his

2

former job or an equivalent position following his FMLA-qualified leave. Following the close of discovery, Crete filed a motion for summary judgment on all of Jarvela's claims. Jarvela responded, after which the district court granted summary judgment in favor of Crete on all claims. (Doc. 40). The district court held that Jarvela could not establish a prima facie case under the ADA because he could not establish that he was a "qualified individual". And the district court found Jarvela's FMLA interference claim to be meritless because there was "ample, unrebutted evidence in the record to indicate that Crete would have discharged [Jarvela] upon learning of his diagnosis of alcohol dependence" regardless of his FMLA leave. (Doc. 40 at 19). The court found Jarvela's FMLA retaliation claim meritless because Jarvela failed to show the required causal connection to establish a prima facie case. Jarvela appeals.

### III. FACTS

Crete employed Jarvela as a commercial truck driver from around November 2003 until April 2010.[1] At some point in that time, Jarvela developed a problem with alcohol abuse. In March 2010 he sought treatment. His personal physician diagnosed him as suffering from alcoholism and referred him to an intensive outpatient treatment program. Jarvela then notified Crete of his need for FMLA leave, and Crete approved leave from March 18, 2010, until June 6, 2010. Jarvela

---

[1] Crete did not employ Jarvela for a brief period that lasted from late 2007 to early 2008.

3

completed his treatment program on April 20, 2010, and immediately sought to return to work—a month and a half after his original diagnosis of alcoholism. But Crete's vice president for safety, Ray Coulter, decided that Jarvela no longer met the qualifications to be a commercial truck driver for Crete. Coulter terminated Jarvela's employment—leading to the present suit.

## IV. ISSUES ON APPEAL

Simply put, the principal issue on appeal is whether Crete violated the ADA by terminating Jarvela. To determine this, we first address whether Jarvela is a qualified individual under the ADA. Furthermore, to answer that question we must address who makes the final decision on whether he is a qualified individual—his medical provider or his employer.

Jarvela also takes issue with the district court's grant of summary judgment in favor of Crete on his FMLA claims. We briefly address this issue.

## V. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, drawing all reasonable inferences in the light most favorable to the nonmoving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007).

## VI. CONTENTIONS OF THE PARTIES

Jarvela asserts a number of contentions in his briefs. But the most pertinent one is the contention that he was a "qualified individual" under the ADA. Crete

4

rebuts this contention, instead arguing that Jarvela was not a qualified individual under the ADA because he was not qualified to be a commercial truck driver for Crete under either DOT regulations or Crete's company policy.

Jarvela also contends that Crete interfered with his rights under the FMLA by failing to return him to the same or an equivalent position upon returning from FMLA leave. And, Jarvela contends that Crete retaliated against him by terminating him for availing himself of his rights under the FMLA. Crete contends that it did not interfere with his rights under the FMLA, because it would have terminated him regardless of his FMLA leave. And Crete further contends that Jarvela failed to show the necessary causal connection to show retaliation.

## VII. DISCUSSION

### 1. ADA CLAIMS

In order to state a prima facie claim under the ADA, a plaintiff must show three things: (1) he is disabled; (2) he is a qualified individual; and (3) he suffered unlawful discrimination because of his disability. *Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1132 (11th Cir. 1996). The dispositive factor in this case is the second one: whether Jarvela was a qualified individual.

A qualified individual under the ADA is one who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and with, or without reasonable

5

accommodation, can perform the essential functions of such position."  29 C.F.R. § 1630.2(m).[2]  An employer's written job description is considered evidence of the essential functions of a particular position.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (citing 42 U.S.C. § 12111(8)).  Here, the job description for Jarvela's position states that an essential duty is that the employee qualifies as a commercial driver pursuant to both DOT regulations and Crete company policies. (Doc. 33-6).  This is the crux of the dispute in this case: whether Jarvela qualified under DOT regulations and Crete company policy.

## A. DOT REGULATIONS

### 1. "Current Clinical Diagnosis of Alcoholism"

The DOT regulations specify that a person is not qualified to drive a commercial motor vehicle if he has a "current clinical diagnosis of alcoholism." 49 C.F.R. § 391.41(b)(4).  The DOT regulations provide only minimal guidance on what constitutes a "current clinical diagnosis of alcoholism."  The regulations only say that "[t]he term 'current clinical diagnosis' is specifically designed to encompass a current alcoholic illness or those instances where the individual's

---

[2] Jarvela also argues that Crete failed to make reasonable accommodations. (Appellant's Initial Br. at 73).  But the argument Jarvela presents on appeal is not the one he made before the district court.  *Compare* Appellant's Initial Br. at 73 (arguing that allowing Jarvela to drive with a six-month certification was the only accommodation needed), *with* Doc. 36 at 22–24 (arguing before the district court that a transfer to a different driving position would be a reasonable accommodation and never mentioning the six-month certification as an accommodation). Jarvela has waived this issue.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

physical condition has not fully stabilized, regardless of the time element." 49 C.F.R. § 391.43. This provision provides little guidance. When the words in a regulation are not clear, and neither Congress nor an agency has given guidance as to their meaning, we interpret the words in accordance with their ordinary meaning except for terms of art. *See Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242 at 1246–47 (11th Cir. 2008) (discussing statutory interpretation, which in this case is applicable to the interpretation of the DOT regulation). A term of art uses words in a technical sense within a certain field of expertise. *See United States v. Cuomo*, 525 F.2d 1285, 1291 (5th Cir. 1976). "Current clinical diagnosis"—as a whole—is not a term of art within either the transportation or medical communities. "Clinical diagnosis" is, however, a term of art within the medical community; it simply means "a diagnosis made from a study of the signs and symptoms of a disease." *See Stedman's Medical Dictionary* 110620 (27th ed. 2000). "Current" is a word with ordinary meaning; it simply means "occurring in or existing at the present time." *Current Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/current (last visited June 3, 2014). So, we interpret a "current clinical diagnosis of alcoholism" in this case to mean that an individual suffers from alcohol dependency.

### 2. Who Decides Whether Someone Has A "Current Clinical Diagnosis of Alcoholism"

Whether Jarvela was a qualified individual turns on whether he had a current

7

clinical diagnosis of alcoholism.   The DOT regulations make clear that an employer makes the final determination of who is a qualified individual to drive a commercial truck. *See* 49 CFR § 391.11(a).  But the regulations do not say who makes the final determination of whether an employee has a current clinical diagnosis of alcoholism—even though someone cannot be qualified to drive a commercial truck if they suffer from such a diagnosis.

Jarvela contends that only a DOT medical examiner could determine whether he had a current clinical diagnosis of alcoholism.  And Jarvela argues, a DOT medical examiner implicitly found that he did not suffer from a current clinical diagnosis of alcoholism because the examiner issued him a six-month medical certificate.  A DOT certified examiner is supposed to issue a medical certificate only if an individual is medically qualified to drive a commercial truck. 49 CFR § 391.43(f). And the DOT regulations explicitly provide that someone who suffers from a current clinical diagnosis of alcoholism is not medically qualified to drive a commercial truck. 49 CFR § 391.41(b)(13).  Crete disagrees with Jarvela and contends that an employer must make the final determination of whether an employee suffers from a current clinical diagnosis of alcoholism.

Crete has the better argument.  As we just mentioned, DOT regulations unambiguously place the burden on an employer to ensure that an employee meets all qualification standards.  49 CFR § 391.11(a).  In fact, the regulations provide

that a motor carrier "shall not require or *permit* a person to drive a commercial motor vehicle" unless the person is qualified to drive one. *Id.* (emphasis added). And a person is only qualified to drive a commercial motor vehicle if he has no "current clinical diagnosis of alcoholism." *See* 49 CFR § 391.41(b)(13). Since the regulations place the onus on the employer to make sure each employee is qualified to drive a commercial vehicle, the employer must determine whether someone suffers from a current clinical diagnosis of alcoholism.[3]

Here, Crete did just that. Crete decided that Jarvela was not qualified under DOT regulations to drive a commercial truck because he had a current clinical diagnosis of alcoholism. The district court found no fault with Crete's determination. And we find no fault with the district court's determination upholding Crete's.

## B. CRETE'S COMPANY POLICY

The DOT regulations explicitly provide that its rules establish "minimum qualifications" for drivers of commercial motor vehicles and "minimum duties of motor carriers with respect to the qualifications of their drivers." 49 C.F.R. § 391.1(a); *see also* 49 C.F.R. § 390.3(d) ("[n]othing in [the DOT regulations] shall be construed to prohibit an employer from requiring and enforcing more

---

[3] This means, of course, that an employer's determination may differ from a medical provider's. For instance, if two medical providers come to different conclusions, the employer must decide with whom it agrees—necessarily disagreeing with one provider's conclusion. The employer bears ultimate responsibility for making this determination.

stringent requirements relating to safety of operation and employee safety and health."). Jarvela conceded this point in the district court. (Doc. 36 at 10).

Crete maintains that it established, pursuant to these regulations, a more stringent company policy prohibiting it from employing anyone as a commercial truck driver who has been diagnosed within the past five years as suffering from alcoholism. Because we determined that Jarvela was not entitled to drive a commercial truck under the DOT regulations, we need not address whether Crete's company policy also supports that determination.

## 2. FMLA CLAIMS

Jarvela also asserted two FMLA claims against Crete: an interference claim and a retaliation claim.

## A. The Interference Claim

In order to state an interference claim under the FMLA, an employee need only demonstrate by a preponderance of the evidence that he was entitled to a benefit the employer denied. *Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1205 (11th Cir. 2001). An employee has the right following FMLA leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A); *see also* 29 C.F.R. § 825.214(a). But an employer can deny reinstatement following FMLA leave if it can demonstrate that

it would have discharged the employee even if he had not been on FMLA leave. *See Martin v. Brevard Cnty. Public Schools*, 543 F.3d 1261, 1267 (11th Cir. 2008); *see also* 29 U.S.C. § 2614(a)(3); 29 C.F.R. §  825.216(a).

Here, Jarvela contends that Crete improperly denied him the benefit of returning to the same or an equivalent position following his FMLA leave.  Crete instead contends that it would have discharged Jarvela upon his diagnosis of alcoholism regardless of whether he took FMLA leave.  The district court found that "Regardless of whether Mr. Jarvela had taken FMLA leave, there [was] ample, unrebutted evidence in the record to indicate that Crete would have discharged him upon learning of his diagnosis of alcohol dependence." (Doc. 40 at 19).  Crete put forward evidence that it would have discharged Jarvela regardless of his FMLA leave, and Jarvela presented no evidence disputing it.  Consequently, we agree with the district court's determination that Jarvela's interference claim fails.

## B. Retaliation Claim

The FMLA prohibits an employer from discriminating against an employee for exercising a right under the FMLA. 29 U.S.C. § 2615(a)(2).  To establish a prima facie case of retaliation under the FMLA, an employee must show that "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Martin*, 543 F.3d at 1268.  The district court held that Jarvela failed on the third

11

prong of this test; he could not show that Crete's decision to terminate him was causally related to his FMLA leave.

Jarvela argues that two factors sufficiently establish a causal connection: Coulter—Crete's vice president who fired him—had access to his personal file containing a notation that he was out on FMLA leave and that his termination occurred as he attempted to return from FMLA leave. Crete argues that Coulter did not have actual knowledge that Jarvela was returning from FMLA leave.

Crete again has the better position. Coulter said that he played no part in approving Jarvela's FMLA leave request and that he was unaware Jarvela had taken FMLA leave. (Doc. 36-12 at 19–20). And he said that he only reviewed certain parts of Jarvela's records before terminating him and that none of the parts he reviewed mentioned Jarvela's FMLA leave. (Doc. 36-12 at 112). Furthermore, Jarvela concedes that two of the most important documents Coulter relied on in terminating Jarvela—a letter from Jarvela's alcohol treatment counselor and a discharge form from Jarvela's treatment program—did not mention in any way the FMLA. (Appellant's Initial Br. at 77). Jarvela bore the burden to prove actual knowledge. And he presented no evidence to rebut Coulter's testimony. Temporal proximity alone is insufficient to establish a causal connection in the absence of actual knowledge by Coulter. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235

(11th Cir. 2010).  Accordingly, summary judgment in favor of Crete on Jarvela's retaliation claim was properly granted.

## VIII. CONCLUSION

We affirm summary judgment in favor of Crete on all claims.

**AFFIRMED.**