[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14923
Non-Argument Calendar

_____

D.C. Docket No. 2:17-cv-14431-RLR

THEODORE SALEM,

Plaintiff-Appellant,

versus

CITY OF PORT ST. LUCIE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 8, 2019)

Before WILSON, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Theodore Salem, a former police officer, appeals following the district court's grant of summary judgment in favor of his former employer, the City of Port Saint Lucie (City), on his claims of Americans with Disabilities Act (ADA) discrimination, Family and Medical Leave Act (FMLA) interference and retaliation, and breach of contract under Florida law.[1]  Salem contends the district court erred by granting the City's motion for summary judgment as to all of his claims because: (1) he established he was a qualified individual for purposes of the ADA and he was unable to maintain his mandatory certification only because the City failed to accommodate his disability; (2) the City interfered with his FMLA leave when it ordered him to report to a meeting—at which he was terminated—while he was on leave; (3) he established a causal connection between his FMLA leave and his termination for purposes of his claim of FMLA retaliation; and (4) the City breached the collective bargaining agreement (CBA) when it extended his probationary period by 180 days, instead of the permitted 90 days, and did not designate his termination as a medical termination.  We address each issue in turn, and after review,[2] affirm the district court.

---

[1]  The district court also granted a motion to dismiss on Salem's claim of intentional infliction of emotional distress.  Although Salem challenges the dismissal of his intentional infliction of emotional distress claim on appeal, he does not offer any substantive arguments— only a conclusory and vague reference—in support of the challenges and has, therefore, abandoned the issue.  *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001).

[2]  We review a district court's grant of summary judgment *de novo*.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).  Summary judgment is appropriate "if the

## I. DISCUSSION

*A.  ADA*

The ADA prohibits discrimination against a qualified individual on the basis of disability.  42 U.S.C. § 12112(a).  The ADA also imposes upon employers an affirmative duty to provide reasonable accommodations for known disabilities, unless doing so would result in undue hardship on the operation of the business. 42 U.S.C. § 12112(b)(5)(A).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability."  *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255-56 (11th Cir. 2007).  To show he is a qualified individual, a plaintiff must show he can perform the essential functions of the employment position he holds with or without reasonable accommodations.  *Id.* at 1256.  An accommodation is reasonable and necessary under the ADA only if it will enable the employee to perform the essential functions of the job.  *Id.* "[E]ssential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform."  *Id.* at 1257 (quotation

---

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether the movant has met this burden, we view the evidence and all factual inferences in the light most favorable to the non-moving party.  *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001).

3

omitted).  "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."  *Id.* (quotation omitted).  The employee has the burden of identifying a reasonable accommodation that would allow him to perform the essential functions of his job. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

The Florida Statutes provide the minimum qualifications for a law enforcement officer to be, and remain, employed.  *See* Fla. Stat. §§ 943.13, 943.135 (2016).  Once an officer has met the minimum qualifications—including Florida Department of Law Enforcement (FDLE) certification—for employment, the officer must comply with "periodic commission-approved continuing training or education."  Fla. Stat. § 943.135(1).  Moreover, "[t]he certification of an officer who fails to comply with s. 943.135(1) shall be inactive, and the officer *may not be employed or appointed as an officer until he or she complies with the provisions* of § 943.135(1)."  Fla. Stat. § 943.1395(4) (emphasis added).

The district court did not err in granting the City's motion for summary judgment as to Salem's ADA discrimination claim because he failed to show he was a qualified individual by demonstrating he could perform essential functions of his position.  *See Holly*, 492 F.3d at 1256.  The following facts are undisputed:

4

(1) maintaining an updated FDLE certification—specifically, undergoing use of force retraining—was an essential function of a City police officer; (2) an officer who failed to maintain an active FDLE certification could not be employed as an officer by the City; (3) Salem's physician did not give him the medical clearance to complete his use of force retraining; and (4) consequently, Salem's FDLE certification became inactive.  Thus, the record reflects Salem was unable to complete an essential function of his position and was not a qualified individual for purposes of the ADA.

Moreover, although Salem argues he could have maintained his FDLE certification with accommodations from the City, he failed to meet his burden of identifying a reasonable accommodation that would have allowed him to do so because the undisputed evidence reflects a waiver or exemption from training was only available for firearms training, not use of force training.  *See Earl*, 207 F.3d at 1367.  Additionally, he only conclusorily alleges he made requests to the City for reasonable accommodations without any accompanying specific supporting facts.  *See Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 924-25 (11th Cir. 2018) ("[T]his Court has consistently held that conclusory allegations without specific supporting facts have no probative value" at summary judgment.).  Thus, the district court did not err in granting summary judgment to the City on Salem's ADA discrimination claim, and we affirm on this issue.

5

*B. FMLA Interference*

FMLA's interference provision makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise," any substantive FMLA right.  29 U.S.C. § 2615(a)(1).  To establish a prima facie case of FMLA interference, a plaintiff must show by a preponderance of the evidence his employer denied him a benefit to which he was entitled.  *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010).  In dealing with an interference claim, "the employer's motives are irrelevant."  *Id.* (quotation omitted).

The district court did not err in determining Salem failed to establish the City interfered with a benefit to which he was entitled under the FMLA.  The FMLA provides eligible employees are entitled to "12 workweeks of leave during any 12-month period . . . [b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter."  29 U.S.C. § 2612(a)(1)(A).  It is undisputed Salem was granted his request for FMLA leave. Moreover, nothing in the FMLA indicates it ensures 12 workweeks of *undisturbed* leave.  To the contrary, regulations expressly allow an employer to contact an employee while he is on FMLA leave to discuss the employee's status.  *See* 29 C.F.R. § 825.311(a).  The City did just that when it called Salem and asked to meet with him to discuss his employment status—*i.e.* his termination.  Accordingly, we affirm on that basis.  *See Big Top Koolers, Inc. v. Circus-Man Snacks, Inc.*, 528

F.3d 839, 844 (11th Cir. 2008) (explaining we can affirm on any ground supported in the record).

## C. FMLA Retaliation

To establish a claim of FMLA retaliation, an employee must demonstrate his employer intentionally discriminated against him for exercising a right guaranteed under the FMLA. *Martin v. Brevard Cty. Pub. Sch.*, 543 F.3d 1261, 1267 (11th Cir. 2008). "Unlike an interference claim, an employee bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Id.* at 1267-68 (quotation omitted). Absent direct evidence of retaliatory intent, we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Martin*, 543 F.3d at 1268. To establish a prima facie case of FMLA retaliation, an employee may show "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Id.*

Close temporal proximity between an employee's protected conduct and the adverse action is generally sufficient to create a genuine issue as to whether there is a causal connection. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). However, "in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in

7

protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006).

If the employee successfully demonstrates a prima facie case of FMLA retaliation, the burden then shifts to the employer to articulate a legitimate reason for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802. Once an employer articulates a legitimate non-discriminatory reason, the employee then must show the employer's proffered reason was pretextual. *See id.* at 804. Pretext is only proven if it is shown both that the reason was false, and that discrimination or retaliation was the real reason behind the challenged action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

The district court did not err in concluding Salem failed to establish a prima facie case of FMLA retaliation because he did not establish a causal connection between his FMLA leave and his termination. *See Martin*, 543 F.3d at 1268. The fact Salem was terminated while on FMLA leave, alone, was insufficient to create a genuine issue as to whether there was a causal connection because the City contemplated his termination before he engaged in a statutorily protected activity. *See Drago*, 453 F.3d at 1308. Specifically, on March 28, 2016, the City informed Salem he was required to complete mandatory retraining in order to maintain an active FDLE certification. It is undisputed an officer who does not maintain an

8

active FDLE certification cannot continue to be employed by the City. *See* Fla. Stat. § 943.1395(4). Thus, by informing Salem he was required to complete mandatory retraining for his FDLE certification, the City contemplated the termination of his employment absent his compliance with the retraining requirement. Accordingly, the City contemplated Salem's termination before he requested his FMLA leave in June 2016, and, consequently, the temporal proximity between his termination and his FMLA leave, alone, did not establish the causal requirement of a prima facie case of FMLA retaliation. *See Drago*, 453 F.3d at 1308.

Moreover, even if he had established a prima facie case of FMLA retaliation, Salem failed to present any substantive evidence to show the City's legitimate reason for firing him—that he had failed to comply with the certification requirements of his position—was pretextual. Even assuming Police Chief John Bolduc stated he was "taking heat from the city [because Salem] was being paid a sworn officer's salary while on light duty" and that, consequently, the City's reason for firing Salem was false, Salem has not presented any evidence that retaliation for his FMLA leave was the real reason behind his termination. *See St. Mary's Honor Ctr.*, 509 U.S. at 515. Accordingly, we affirm on this issue.

*D. Breach of Contract*

Under Florida law, a breach of contract claim "requires the plaintiff to plead and establish:  (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach."  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009).  To prove the existence of a valid contract, a plaintiff must plead facts showing the following:  "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms."  *Id.*

The district court did not err in granting the City's motion for summary judgment as to Salem's breach of contract claim for two reasons.  First, as to his claim the City breached the CBA by extending his probationary period by 180 days, and assuming without deciding he established the first three elements of a breach of contract, Salem failed to demonstrate he suffered any damages from the City's breach of the CBA.  Salem's probationary period was set to end on June 5, 2016.  Under the terms of the CBA, the City could have extended Salem's probationary period by up to 90 days.  The City terminated Salem on July 5, 2016—only 30 days into his extended probationary period.  Thus, the damages he alleges were necessarily caused by his termination, not the extension of his probationary period.

Second, as to his claim the City committed a breach of contract by failing to designate his termination as a medical termination, Salem failed to provide any

10

evidence the City was required by contract to do so.  Thus, we affirm on the breach of contract issues.

## II.  CONCLUSION

The district court did not err in granting summary judgment to the City on Salem's ADA, FMLA interference and retaliation, and breach of contract claims. Thus, we affirm.

**AFFIRMED.**