[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13343
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-01797-SCJ


MONIQUE CALDWELL,

Plaintiff-Appellant,

versus

CLAYTON COUNTY SCHOOL DISTRICT,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(March 23, 2015)

Before JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Monique Caldwell appeals *pro se* from the district court's grant of summary judgment to the Clayton County School District (the "School District") in her employment-discrimination suit alleging retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a). The district court determined that Caldwell failed to establish a *prima facie* case of retaliation because she did not establish a causal connection between her FMLA leave and the School District's decision not to renew her assistant-principal contract. Caldwell contends that she can show causation because she presented evidence that her immediate supervisor made the non-renewal recommendation based on a retaliatory animus against employees who took FMLA leave. After careful review of the record and the parties' briefs, we affirm.

## I.

Caldwell began working as an assistant principal for the School District during the 2005-2006 school year. Before that, she was a teacher. She served as assistant principal at two different schools prior to moving to Thurgood Marshall Elementary School ("Marshall Elementary"), where she was an assistant principal from 2007 to 2012. Her lawsuit primarily concerns events occurring during the 2010-2011 and 2011-2012 school years. At all times relevant to this appeal, Caldwell's immediate supervisor was Velma Mobley, the principal of Marshall Elementary.

Caldwell began work for the 2011-2012 school year in July 2011. In August 2011, Caldwell requested, and was granted, leave under the FMLA. She was on FMLA leave from August 11, 2011, to October 28, 2011. Upon returning to work, she resumed her position as assistant principal.

When Caldwell returned to work on October 31, 2011, she received a Professional Development Plan ("PDP") from Mobley. A PDP was a corrective plan given to a School District employee when an administrator noticed a deficiency. The PDP stated that Caldwell needed to complete at least ten "E-Walks" per week (which involved doing classroom observations and then submitting data using "E-Walk" software), submit minutes for collaborative meetings, and attend a time-management course in December.

Around that same time, Caldwell also learned that she had been placed on a Performance Enhancement Process ("PEP") list by Mobley while she was out on FMLA leave. Placement on the PEP list is an indication that an employee had ongoing documented deficiencies, and it triggers a monitoring process among the administrator and human resources about the employee's progress towards correcting a deficiency. The purpose of the monitoring process is primarily to assist the administrator in making a recommendation regarding whether the employee's employment contract should be renewed.

3

On March 15, 2012, Caldwell received an unsatisfactory annual performance review from Mobley. Caldwell was given a "Needs Improvement" rating in five categories. According to Mobley, Caldwell had failed to fulfill the requirements of the PDP, which Caldwell disputed. Two weeks later, on March 29, Caldwell again met with Mobley to discuss her evaluation, at which time Caldwell submitted documents allegedly showing that she had completed the PDP, including minutes of collaborative meetings with teachers. Mobley did not accept the minutes.

After the meeting on March 29, Mobley submitted Caldwell's unsatisfactory review with a recommendation not to renew Caldwell's assistant-principal contract. The non-renewal recommendation stated that Caldwell failed to schedule and facilitate collaborative meetings, perform five informal observations weekly, or review lesson plans. The recommendation also noted that Caldwell was late to work over twenty times during the 2011-2012 school year. The recommendation did not mention Caldwell's FMLA leave.

Mobley's non-renewal recommendation was submitted to Greg Curry, a human-resources director, who then submitted the recommendation along with relevant documentation to the School District's legal department. Once the legal department approved the non-renewal recommendation, it was submitted to the superintendent for approval. After that, the Clayton County Board of Education

4

("Board") made the final decision not to renew Caldwell's assistant principal contract for the 2012-2013 school year.

In May 2012, Caldwell received notice of the decision not to renew her assistant-principal contract. She was offered a teacher contract at a different elementary school instead but did not sign it, effectively ending her employment with the School District.

## II.

Caldwell, through counsel, filed this lawsuit in May 2013 in the United States District Court for the Northern District of Georgia, alleging that the School District had retaliated against her for exercising her rights under the FMLA. The School District moved for summary judgment, arguing that Caldwell's non-renewal was unrelated to her FMLA leave and was based solely on her documented performance issues and her failure to arrive to work on time consistently. The School District asserted that the length of time between Caldwell's FMLA leave and her non-renewal was too long to show that they were related, that Caldwell never completed the PDP, that no members of the Board knew of Caldwell's FMLA leave, and that Caldwell could not prevail under a "cat's paw"[1] theory of liability because she had not shown that Mobley had a

---

[1] The cat's paw theory "provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating

retaliatory animus and that the School District followed Mobley's recommendation without conducting an independent review.

In support of its motion for summary judgment, the School District submitted excerpts from Caldwell's, Mobley's, and Curry's depositions, affidavits from School District employees and Board members, and documents detailing Caldwell's performance and the School District's decision not to renew her contract. Notably, the School District produced evidence that Mobley had given Caldwell a PDP in March 2011, which provided that Caldwell needed to plan collaborative meetings with special-education teachers, submit minutes of those meetings, and report to work in a timely manner. In addition, in her annual evaluation for the 2010-2011 year, Mobley gave Caldwell a "Needs Improvement" rating in four categories.

Mobley testified that Caldwell had problems with time management, cafeteria discipline, and collaborative meetings with teachers. She further testified that she submitted the paperwork for Caldwell's second PDP in August 2011, but she was unable to meet with Caldwell at that time because Caldwell was out on FMLA leave. She discussed the PDP with Caldwell when she returned in October 2011. After Caldwell returned from FMLA leave, Mobley noticed that Caldwell

the complaint against the employee." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999).

was still arriving to work late and had not started the collaborative meetings. In January or February 2012, Mobley gave Curry a list of employees whose contracts she may recommend not renewing, but she had not made a decision at that time. When she met with Caldwell on March 15, Mobley still had not made a final decision and wanted to give Caldwell time to submit documentation. However, she did not accept Caldwell's minutes of the collaborative meetings because several of them were not signed by the teachers in the special-education team. Mobley made the final recommendation decision in March because her recommendation was due by April.

Other evidence established that teachers and assistant principals were typically reviewed on three occasions throughout a school year. For the 2011-2012 school year, a "pre-conference" meeting was to be held by August 26, 2011, a "mid-year" conference was to be held by December 9, 2011, and then an "annual" evaluation was to be held by March 16, 2012. Mobley acknowledged that she did not follow this general timeline with respect to Caldwell but testified that there was no timeline of evaluation conferences for employees who took leave during the school year.

Members of the Board testified that they did not recall discussing Caldwell's FMLA leave when deciding not to renew her contract and that they typically asked questions about non-renewal recommendations. Curry testified that he discussed

the PEP list with Mobley in January or February 2012.  The chief human-resources officer for the School District, Doug Hendrix, testified that a School District policy required the termination of any employee with more than fourteen unexcused tardies.

Caldwell responded in opposition, contending genuine issues of material fact existed regarding whether Mobley was motivated to retaliate against Caldwell for taking FMLA leave.  She asserted that several pieces of evidence demonstrated a causal connection between her FMLA leave and her demotion, as well as the pretextual nature of the School District's explanation for the demotion.  As evidence of causation and pretext, she noted the following: (1) Mobley placed her on the PEP list, even though Caldwell could not have received a second PDP since she was on FMLA leave at the time; (2) Mobley could not have been concerned about Caldwell's performance in the E-Walk program because it was a new program; and (3) Mobley said that Caldwell's 2011-2012 PDP was a continuation of her 2010-2011 PDP, but Mobley did not note this on the pre-conference form she created in August 2011.

Caldwell also claimed that she could show causation and pretext because Mobley contemporaneously retaliated against two other teachers for taking FMLA leave, Mobley failed to comply with state regulations and created false documents indicating that she had complied with them, and Mobley lied about the timing of

8

her decision to recommend non-renewal and misled Caldwell about when she would make a final decision.

The district court granted summary judgment to the School District after concluding that Caldwell had failed to produce any evidence of a causal link between her non-renewal and her FMLA leave. Specifically, the court determined, no evidence in the record showed that any members of the Board—the final decisionmakers—knew of Caldwell's FMLA leave at the time that they made the decision not to renew her assistant-principal contract.

In reaching this conclusion, the court acknowledged Caldwell's allegations and evidence regarding an impermissibly retaliatory motive by Mobley, but found that they did not affect the causation analysis because it was undisputed that the Board, not Mobley, made the actual decision not to renew Caldwell's contract. While the circumstances presented an opportunity to argue a cat's paw theory of liability, the court explained, Caldwell had "fail[ed] to make any cat's paw theory argument in support of her retaliation claim." Therefore, the court concluded, it did not need to address whether the School District could be held causally liable for Mobley's allegedly retaliatory recommendation. Accordingly, the court entered judgment in favor of the School District. Caldwell timely filed a *pro se* notice of appeal from the judgment.

9

## III.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We review a district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party.  *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1265 (11th Cir. 2008).  A dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

## IV.

Under the FMLA, an eligible employee is entitled to take up to twelve weeks of leave for a serious health condition that makes the employee unable to perform the functions of her job.  29 U.S.C. § 2612(a)(1).  The FMLA prohibits employers from interfering with, restraining, or denying "the exercise of or the attempt to exercise" any rights guaranteed under the Act.  *Id.* § 2615(a)(1).

We have recognized two types of FMLA claims:  interference claims and retaliation claims.  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).  Interference claims are those "in which an employee asserts that [her] employer denied or otherwise interfered with [her] substantive rights

10

under the Act."    *Strickland v. Water Works & Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).    Retaliation claims are those "in which an employee asserts that [her] employer discriminated against [her] because [she] engaged in activity protected by the Act."    *Id.*    Caldwell presents only a retaliation claim in this case.

To prove a retaliation claim under the FMLA, the plaintiff must show that her employer intentionally discriminated against her for having exercised an FMLA right.    *Martin*, 543 F.3d at 1267.    In order words, the plaintiff must show that her "employer's actions were motivated by an impermissible retaliatory or discriminatory animus."    *Id.* at 1267-68 (quoting *Strickland*, 239 F.3d at 1207 (internal quotation marks omitted)).

Where, as here, the plaintiff presents no direct evidence of retaliatory intent, we analyze the circumstantial evidence presented under the burden-shifting framework of *McDonnell Douglas*.[2]    *Id.* at 1268; *Hurlbert*, 439 F.3d at 1297. Under that approach, the plaintiff must first establish a *prima facie* case of retaliation.   This requires a showing that (1) she engaged in activity protected by the FMLA, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to the protected activity.    *Id.*    It is undisputed that Caldwell engaged in protected activity and suffered an adverse employment

---

[2] *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).

11

decision in the form of the non-renewal decision.  Therefore, only the element of causal connection is at issue.

If the plaintiff establishes a *prima facie* case of retaliation, the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Martin*, 543 F.3d at 1268.  Once the employer makes this proffer, the plaintiff must demonstrate that the employer's reason was actually a pretext for discrimination.  *Id.*  Evidence used to establish a *prima facie* case may also be used to establish pretext.  *See, e.g.*, *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).

We have held that to demonstrate a causal connection a plaintiff needs to demonstrate only that the protected activity and adverse action were not completely unrelated.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  To do that, "the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action."  *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000).  Close temporal proximity between the protected conduct and the adverse action generally is sufficient to establish a causal connection.  *See Hurlbert*, 439 F.3d at 1298.  However, temporal proximity alone is insufficient when unrebutted evidence indicates that the decisionmaker did not know about the employee's protected conduct when the adverse action occurred.  *Id.*; *Brungart*, 231 F.3d at 799 ("A

12

decision maker cannot have been motivated to retaliate by something unknown to him.").

In this case, it is undisputed that the Board of Education made the final decision not to renew Caldwell's assistant-principal contract. We have found no record evidence suggesting that the members of the Board had any knowledge of Caldwell's FMLA leave at the time that they made the non-renewal decision, and Caldwell does not argue that they did. Nor is there a close temporal proximity between Caldwell's leave ending in October 2011 and the non-renewal decision in May 2012. Thus, without more, Caldwell has not shown a causal connection between her FMLA leave and the Board's decision not to renew her assistant-principal contract. *See Hurlbert*, 439 F.3d at 1298; *Brungart*, 231 F.3d at 799.

Caldwell contends that she presented sufficient circumstantial evidence to create a genuine issue of material fact as to whether Mobley was motivated by a discriminatory animus. And the School District, she asserts, may be held liable for following the biased recommendation of a subordinate.

We have held that causation may be established when a decisionmaker followed a biased recommendation from a non-decisionmaker without independently investigating the complaint. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). "In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the

13

recommender's discriminatory animus." *Id.* But where the "decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased subordinate employee." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1270 (11th Cir. 2001).

The district court, however, found that Caldwell did not present a cat's paw argument during summary judgment, so it declined to address the argument. It is well settled that we will not consider on appeal an issue or argument not fairly presented to the district court, unless our refusal to do so will result in a miscarriage of justice. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598-99 (11th Cir. 1995) (*en banc*); *see also Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (issues raised for the first time on appeal will not be considered). The parties, not the district court, bear the burden of formulating arguments based on the evidence. *Resolution Trust Corp.*, 43 F.3d at 599. Under the circumstances in this case, we are constrained to agree with the district court that Caldwell did not fairly present a cat's paw argument to the district court for resolution.[3] *See Access Now, Inc.*, 385 F.3d at 1331-32.

---

[3] In her counseled filings in opposing summary judgment, Caldwell did not develop any argument with respect to this theory of liability or present evidence tending to show that Mobley's alleged bias could be imputed to the Board. Caldwell's only reference to such a theory of causation appears in her response to the School District's statement of material facts, where Caldwell references the Supreme Court's decision in *Staub v. Proctor Hospital*, 562 U.S. 411, 131 S. Ct. 1186 (2011), several times for the proposition that an employer may be held liable for the discriminatory animus of a non-decisionmaker employee who influenced the ultimate employment decision. In *Staub*, the Supreme Court ruled that a plaintiff may assert a cat's paw

14

In any case, even assuming that the School District could be held liable for Mobley's recommendation, Caldwell has not presented sufficient evidence by which a reasonable jury could conclude that the non-renewal recommendation was causally related to her FMLA leave or that the School District's non-discriminatory reasons for Mobley's non-renewal recommendation were pretext for retaliatory animus.[4]

Here, the School District stated that its non-renewal decision was based on Caldwell's performance deficiencies and her failure to arrive to work on time consistently, which are legitimate, non-discriminatory reasons. Thus, the burden shifted back to Caldwell to prove that these reasons were pretextual. *Martin*, 543 F.3d at 1268. In other words, Caldwell had to produce or identify evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (*en banc*) (quoting *Combs*, 106 F.3d at 1528). She has not done so.

---

claim under the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by showing that (1) a supervisor performed an act motivated by animus that was intended to cause an adverse employment action, and that (2) the act was the proximate cause of the ultimate adverse employment action. 562 U.S. at ___, 131 S. Ct. at 1194.

[4] We may affirm the district court's grant of summary judgment on any adequate ground supported by the record. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251-52 (11th Cir. 2013); *see Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 (11th Cir. 2004) (considering the issue of pretext for the first time on appeal).

15

First, Caldwell admitted in her deposition that she did not perform the minimum number of E-Walks required by the PDP during some weeks, and she presented no evidence to rebut Mobley's assertion in the non-renewal recommendation that she was late to work over twenty times during the 2011-2012 school year. She also admitted this fact in her response to the School District's statement of material facts. Thus, undisputed evidence establishes that Caldwell did not fully complete the second PDP and did not report to work on time consistently.

Second, there is no close temporal proximity between Caldwell's FMLA leave, which ended in October 2011, and Mobley's submission of her recommendation in March 2012. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that a "three and one-half month temporal proximity is insufficient to create a jury issue on causation"). Although Caldwell was given a PDP and placed on the PEP list while out on FMLA leave, Caldwell does not argue that these actions in themselves were adverse employment decisions. Nor would the close proximity of these actions to her FMLA leave alone establish pretext. *See Hurlbert*, 439 F.3d at 1298.

Third, the timing of Caldwell's second PDP and placement on the PEP list does not appear suspicious in light of undisputed evidence of Caldwell's documented performance deficiencies before she took FMLA leave, as evidenced

16

by the March 2011 PDP and the annual evaluation for the 2010-2011 school year, in which Caldwell received a "Needs Improvement" rating in four categories. The fact that these performance deficiencies were identified at the end of the 2010-2011 school year is consistent with Mobley's testimony that the PDP carried over into the 2011-2012 school year, even if it was not identified on the pre-conference form as it should have been. In addition, the reasons Mobley gave for recommending Caldwell's non-renewal were consistent with the deficiencies that had been identified before Caldwell took FMLA leave. *Cf. id.* at 1298 ("We have recognized that an employer's failure to articulate clearly and consistently the reason for an employee's discharge may serve as evidence of pretext."). In particular, both the March 2011 PDP and Mobley's non-renewal recommendation identify Caldwell's deficiencies in facilitating collaborative meetings with teachers and in reporting to work on time.

Fourth, while "an employer's deviation from its own standard procedures may serve as evidence of pretext," *id.* at 1299, the minor discrepancies Caldwell has identified regarding the documentation concerning her performance evaluations and the timing of the non-renewal recommendation are insufficient to show a genuine dispute about a "material" fact concerning pretext. *See Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

17

Finally, Caldwell points to evidence that two other teachers at Marshall Elementary claimed that Mobley had retaliated against them for taking FMLA leave around the same time. However, while this evidence may be probative of Mobley's discriminatory intent generally, it does not show that Mobley retaliated *against Caldwell* for taking FMLA leave. And, without more, on this record, the evidence would not permit a reasonable jury to find that the School District's reasons for Caldwell's non-renewal "were not the real reasons for the adverse employment decision." *Chapman*, 229 F.3d at 1024 (quoting *Combs*, 106 F.3d at 1528).

## V.

In sum, Caldwell failed to create a genuine issue of material fact with respect to whether the School District's reasons for her termination were actually pretext for discrimination. Accordingly, and for the reasons explained above, we affirm the district court's grant of summary judgment to the School District.

**AFFIRMED.**

18